**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,                                                           Cr. No. 19-2321 JAP

    v.

DECARRIO RICHARDSON,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

On January 20, 2020, Defendant Decarrio Richardson filed a MOTION TO SUPPRESS EVIDENCE OR, IN THE ALTERNATIVE, TO HOLD A *FRANKS* HEARING ("Motion") (Doc. 49). The Motion is fully briefed. *See* UNITED STATES' RESPONSE TO DEFENDANT'S MOTIONS TO SUPPRESS ALL EVIDENCE OBTAINED THROUGH THE EXECUTION OF THE STATE SEARCH WARRANT OR ALTERNATIVELY TO HOLD A *FRANKS* HEARING (Doc. 75); REPLY IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OR, IN THE ALTERNATIVE, TO HOLD A *FRANKS* HEARING (Doc. 84). Defendant raises various arguments challenging the search warrant that authorized a search of his residence and the search warrant's supporting affidavit. Doc. 49 at 1–2. The Court has determined that a hearing is unnecessary for the resolution of this Motion. For the reasons below, the Court will deny Defendant's Motion.

BACKGROUND

On April 10, 2018, a New Mexico District Court Judge issued a warrant for the search of the "persons and/or place described in the Affidavit." Doc. 74-1. Relevant to this Motion, the

attached affidavit prepared by Bernalillo County Sherriff's Office Detective J. Koppman described in detail that

> [t]he residence to be searched is located in the City of Albuquerque, County of Bernalillo, and State of New Mexico. The residence is located at 221 Moon NE Albuquerque, NM 87123.

*Id.* at 2. The affidavit also detailed Detective Koppman's investigation. It explained that

> [d]uring the first week of April 2018 Affiant spoke with a Confidential Source (herein referred to as CS). The CS stated that it had first hand, personal knowledge of a male subject by the name of Decarrio Richardson, AKA "Black" who is actively and continuously selling cocaine and crack cocaine out of his residence, located at 221 Moon NE. The CS stated that it has been to Richardson's residence on numerous occasions for the purpose of purchasing cocaine and crack-cocaine. According to the CS, it would meet with Decarrio Richardson at his residence, located at 221 Moon NE and provide him with an amount of money (U.S. currency) and in return, Richardson would provide IT with an amount of cocaine or crack-cocaine. The CS stated Richardson will also have IT meet at predetermined locations to conduct the narcotics transactions, as well. The CS stated Richardson will either arrive in his black Audi or white BMW to complete the transactions. Affiant located a Decarrio Monte Richardson (7/16/1985) in a law enforcement data base. Affiant showed the CS a picture of that subject and the CS positively identified him as the Decarrio Richardson, that sells IT cocaine and crack cocaine. The CS added that Richardson is a member of the street gang, Memphis Mob. The CS stated Richardson is always armed with firearms. The CS stated IT has observed Richardson with an uzi, a .380 and a 9mm pistol. The CS stated Richardson keeps his narcotics, money and firearms inside of a black backpack. The CS stated IT has also observed Richardson with a pistol wedged between the front seat and center console, as well as on the front, passenger floorboard of his vehicle.
>
> The CS directed affiant to 221 Moon NE and identified the location as the residence that Decarrio Richardson sells narcotics out of.
>
> Affiant conducted a data base search on Decarrio Richardson (711611985) and found that he has multiple felony arrests and multiple felony convictions for trafficking narcotics. As a convicted felon, Richardson should not be in possession of any firearms.
>
> During the second week of April the CS met up with detectives and agreed to assist affiant with a controlled purchase of narcotics. The CS called Richardson on the phone and asked if IT could purchase some crack. Richardson agreed to sell IT crack and instructed IT to go to a predetermined location. The CS was searched for

weapons and narcotics. None were found. The CS went to the predetermined location and met with Richardson, who was in a black Audi, with chrome custom rims and a temporary registration tag. The CS returned to Affiant and presented a quantity of crack-cocaine. The CS was searched for other narcotics and weapons. None were found. The crack-cocaine was field tested with a NIK test kit, which yielded a presumptive positive result for cocaine.

Affiant states that the CS has provided detectives with information regarding people involved in Narcotics activities and of persons who have been arrested for Narcotics activities. This information has been corroborated by detectives. The information supplied by the CS is believed to be true and correct. The CS has never given detectives information that has proved to be false. The CS is aware that supplying any false or misleading information to the detectives could lead to criminal charges being filed or could void all other agreements made between It and the detectives, as a member of the Bernalillo County Sheriff's Department. The CS is familiar with the appearance of Narcotics and the methods by which they are sold, and used. The CS is cooperating with detectives in lieu of prosecution of criminal charges.

Within the past twenty-four (24) hours, Affiant spoke with CS. The CS stated Decarrio Monte Richardson is still actively and continuously selling cocaine and crack-cocaine out of his residence.

*Id.* at 4–7.

On April 11, 2018, law enforcement officers searched Defendant's residence and found firearms and ammunition.[1] In July 2019, a federal grand jury returned an indictment charging Defendant with: Count 1, possessing with intent to distribute 500 grams and more of cocaine, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(B); Count 2, being a felon in possession of a firearm and ammunition, *see* 18 U.S.C. §§ 922(g)(1), 924(a)(2); and Count 3, using and carrying a firearm during and in relation to a drug trafficking crime and possessing a firearm in furtherance of such crime, *see* 18 U.S.C. § 924(c)(1)(A)(i). *See* INDICTMENT (Doc. 33).

Defendant now moves to suppress evidence discovered as a result of the search of his

---

[1] Law enforcement officers also searched Defendant's black Audi, which is the subject of a different suppression motion filed by Defendant. *See* MOTION TO SUPPRESS (Doc. 48). The Court has a hearing on that Motion to Suppress on May 14, 2020.

residence or, in the alternative, to hold a *Franks* hearing on the grounds that: (1) the search warrant was not supported by probable cause, and (2) the affidavit supporting the search warrant contained material omissions and false or misleading statements, and the deficiency was such that the warrant could not be relied on in good faith. Doc. 49 at 2.

## DISCUSSION

I.  Probable cause

Defendant asserts that the search warrant was not supported by probable cause because: (1) the affidavit lacked a nexus between the location to be searched and criminal activity; (2) the search warrant was stale when executed; and (3) the affidavit did not lay out the CS's veracity, reliability, and basis of knowledge. Doc. 49 at 5–9.

The Fourth Amendment provides that "no [w]arrants shall issue, but upon probable cause." U.S. Const. amend. IV. "[P]robable cause to issue a search warrant . . . exists when the supporting affidavit sets forth sufficient facts that would lead a prudent person to believe that a search of the described premises would uncover contraband or evidence of a crime." *United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998). Thus, "[a] search warrant must be supported by probable cause, requiring more than mere suspicion but less evidence than is necessary to convict." *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000) (internal quotation marks omitted).

a.  Nexus requirement

"Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched." *United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990). "This nexus exists when the affidavit 'describes circumstances which would warrant a person of reasonable caution in the belief that the articles sought are in a particular place.'" *United States v.*

*Knox*, 883 F.3d 1262, 1277 (10th Cir.), *cert. denied,* 139 S. Ct. 197, 202 L. Ed. 2d 123 (2018) (quoting *United States v. Villanueva*, 821 F.3d 1226, 1236 (10th Cir. 2016)).

Defendant contends that the search warrant and supporting affidavit fail to establish a nexus between criminal activity and his residence at 221 Moon St. NE. *See* Doc. 49 at 5. He points to the affidavit which recounts that "[t]he CS states that it has been to Richardson's residence on numerous occasions for the purpose of purchasing cocaine and crack-cocaine." Doc. 74-1 at 4. He then claims "[t]here is no indication when the CS was last at Mr. Richardson's home nor any other details supplied as to where the drugs were located or where the drugs were last seen at the residence." Doc. 49 at 6. According to Defendant, without more information, the affidavit "failed to establish a nexus between the residence to be searched and evidence of contraband at the home at the time of the search warrant." *Id.*

Defendant's argument omits key details from the affidavit that sufficiently detail a nexus between Defendant's residence and his suspected criminal activities. For example, the CS reported first-hand knowledge of Defendant selling drugs out of his residence. Doc. 74-1 at 4. The CS knew this because it had purchased cocaine and crack-cocaine from Defendant at his residence. *Id.* Because of its knowledge, the CS was also able to provide Detective Koppman Defendant's address: 221 Moon St. NE. *Id.* Further, the CS informed Detective Koppman that Defendant was selling cocaine and crack-cocaine from his home within 24 hours of application for the search warrant. *Id.* at 5. All that information, which is detailed in the search warrant affidavit, provides a sufficient nexus between Defendant's residence and the alleged criminal activity.

Defendant also argues that the affidavit was "replete with repetitive and tenuous facts [and thus] d[id] not provide a magistrate with a sufficient basis for drawing a reasonable inference that

a search would uncover evidence of criminal activity." Doc 49 at 7 (quoting *Danhauer*, 229 F.3d at 1006). In *Danhaur*, the Tenth Circuit was concerned with a warrant that contained repetitive facts about the "physical description of the Danhauer residence and the identity of the occupants." *Danhauer*, 229 F.3d at 1006. It also included repetitive statements about the criminal history of the occupants. *Id.* "The affidavit [did] not reveal, however, the informant's basis of knowledge or adequately verify the informant's most serious allegation, that the Danhauers were manufacturing methamphetamine." *Id.* Here, however, the search warrant affidavit does not include repetitive facts. Instead, Defendant attempts to compare the Detective Koppman's affidavit in this case, to search warrant affidavits supplied by Detective Koppman in other cases. Doc. 49 at 7. In fact, Defendant attached to this Motion, seven search warrant affidavits prepared by Detective Koppman where he uses similar language to describe the credibility of confidential sources. *See* Docs. 49-1–49-7. That, however, is not the kind of repetitive and tenuous language the Tenth Circuit cautioned against in *Danhaur*. In this case, the search warrant affidavit was not "replete with repetitive and tenuous facts" about Defendant's residence, his physical appearance, or his criminal history. *See* Doc. 74-1 at 1–5. Rather, it described in detail the CS's experiences with Defendant, including the purchase of crack-cocaine from Defendant at his residence and a controlled buy of crack-cocaine at a predetermined location, and, as described below, it sufficiently detailed the CS's veracity, reliability, and basis in knowledge. *Id.* at 4. Accordingly, the Court finds that the search warrant affidavit provided the issuing judge a "sufficient basis for drawing a reasonable inference that a search would uncover evidence of criminal activity." *Danhauer*, 229 F.3d at 1006.

Given the totality of the circumstances, the Court concludes that the search warrant and

supporting affidavit provided a nexus between suspected criminal activity and Defendant's residence.

   b. Staleness

Defendant briefly argues that the search warrant was stale when executed. Doc. 49 at 6. He directs the Court to the same statement from the affidavit on which he relied for his nexus argument—"The CS states that it has been to Richardson's residence on numerous occasions for the purpose of purchasing cocaine and crack-cocaine." *Id.*; Doc. 74-1 at 4. Defendant then asserts that "[w]ithout more information from the CS or the independent police investigation, the information in the affidavit was stale[.]" Doc. 49 at 6.

"[P]robable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." *United States v. Mathis,* 357 F.3d 1200, 1206–07 (10th Cir. 2004). "[W]hether information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *Id.* at 1207 (quotation omitted). "As is only logical, ongoing and continuous activity makes the passage of time less critical when judging the staleness of information upon which a search warrant is based, because evidence of a longstanding pattern of repeated activity makes it less likely that the activity has ceased within a short time frame." *United States v. Roach*, 582 F.3d 1192, 1201 (10th Cir. 2009) (internal quotation marks and citation omitted).

The search warrant affidavit provides that "[w]ithin the past twenty-four (24) hours, Affiant spoke with the CS. The CS stated that Decarrio Monte Richardson is still actively and continuously selling cocaine and crack-cocaine out of his residence." Doc. 74-1 at 5. Given the "ongoing and continuous nature" of Defendant's alleged drug trafficking and the CS's confirmation that that

activity continued within 24 hours of the search warrant affidavit, the information contained in the search warrant was not stale.

        c. Veracity, reliability, and basis of knowledge

Defendant next argues that the search warrant affidavit does not establish the veracity, reliability, and basis of knowledge of the CS. Doc. 49 at 8. A probable cause determination includes an examination of the veracity, reliability, and basis of knowledge of the informant. *See United States v. Campbell*, 603 F.3d 1218, 1234 (10th Cir. 2010). "Generally, [courts] evaluate whether these factors as revealed by the facts in the affidavit create a fair probability that contraband or evidence of a crime will be found in a particular place on consideration of the totality of circumstances." *Id.* (internal quotation marks omitted). Accordingly, "a deficiency in one factor may be compensated for by a strong showing of another." *Id.*

In *Campbell*, the Tenth Circuit concluded that the search warrant affidavit provided sufficient detail about a CS's reliability, veracity, and basis of knowledge. The court explained:

> The affidavit states he admitted to being present when Defendant shot Barney. "[A] firsthand observation is entitled to greater weight than secondhand information." [*United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009)]. Furthermore, the affidavit also states CW # 3 is a documented NHC street gang member, which Defendant does not dispute, and has "personal knowledge" of the facts in his statements to the WPD based upon his direct conversations with members and associates of the NHC, his observations of members and associates of the NHC, and his admitted participation in some of the NHC's criminal activities which he describes. It fully discloses the fact CW # 3 desired a lower sentence in a separate criminal case in exchange for his cooperation, but had not yet been provided a benefit for his cooperation. And, though the affidavit did not provide specifically how law enforcement verified or deemed reliable CW # 3's statement that Defendant killed Barney, it did represent that much of CW # 3's "information has been verified and deemed reliable through independent investigation such as police reports, recorded conversations, letters, interviews, telephone records, surveillance, undercover narcotics purchases and evidence recovered in the execution of search warrants." ROA, vol.1, pt.2, at 303.

603 F.3d at 1234–35 (first bracket in original).

Here, the affidavit provides sufficient information about the veracity, reliability, and basis of the CS's knowledge to support the issuing judge's determination of probable cause. Like in *Campbell*, the CS had first-hand knowledge of Defendant's drug trafficking activities, because the CS had purchased cocaine and crack-cocaine from Defendant in the past. Doc. 74-1 at 4. As the Tenth Circuit explained, "a firsthand observation is entitled to greater weight than secondhand information." *Quezada–Enriquez,* 567 F.3d at 1233. Further, like *Campbell*, the CS is cooperating with detectives for personal benefit (here, to avoid criminal charges), and the CS is aware that any false or misleading information could lead to criminal charges. Doc. 74-1 at 5. Finally, the CS's tip that Defendant was engaged in drug trafficking was corroborated by a controlled buy which took place at a predetermined location in Defendant's vehicle. *Id.*at 4. Given the totality of the circumstances, the search warrant affidavit sufficiently sets forth the CS's veracity, reliability, and basis in knowledge to support a determination of probable cause.

II.     *Franks* hearing

Under *Franks v. Delaware*, 438 U.S. 154 (1978), when a defendant challenges the veracity of an affidavit supporting a search warrant, courts assess the need for a hearing using a two-prong test. 438 U.S. at 155. In such cases, a hearing should be held if (1) "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and (2) "the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155–56. Importantly, "[t]he truthfulness at issue is that of the affiant, not the affiant's sources (other than government employees, *see United States v. Campbell*, 603 F.3d 1218, 1228 (10th Cir. 2010)); and honest

errors by the affiant are not grounds for suppression." *United States v. Sanchez*, 725 F.3d 1243, 1247 (10th Cir. 2013); *see also Campbell*, 603 F.3d at 1228 (explaining that "negligence or innocent mistakes are insufficient to justify the exclusion of evidence.").

Defendant argues that the affidavit prepared by Detective Koppman contained material omissions and false or misleading statements, and that deficiency was such that the warrant could not be relied upon in good faith. Doc. 49 at 10–17. In particular, Defendant points to the following language from the affidavit:

> Affiant states that the CS has provided detectives with information regarding people involved in Narcotics activities and of persons who have been arrested for Narcotics activities. This information has been corroborated by detectives. The information supplied by the CS is believed to be true and correct. The CS has never given detectives information that has proved to be false. The CS is aware that supplying any false or misleading information to the detectives could lead to criminal charges being filed or could void all other agreements made between It and the detectives, as a member of the Bernalillo County Sheriff's Department. The CS is familiar with the appearance of Narcotics and the methods by which they are sold, and used. The CS is cooperating with detectives in lieu of prosecution of criminal charges.

Doc. 74-1 at 6–7. He again directs the Court to the seven search warrant affidavits attached to the Motion, where Defendant Koppman used very similar statements to describe his confidential sources. Defendant suggests that part of the affidavit must be false because Detective Koppman simply inserted "boiler plate" language.

Defendant, however, does not actually make a substantial showing that Detective Koppman's statements about the CS were recklessly or intentionally false *in this case.* Instead, Defendant speculates that because Detective Koppman has used similar language in other search warrant affidavits, the statements here cannot be trusted. But wholly speculative allegations are insufficient to support a *Franks* hearing. *See, e.g.*, *United States v. Long*, 774 F.3d 653, 662 (10th Cir. 2014) ("What is notably missing from this argument is any *evidence* that the allegations

of the affidavit are false. It consists solely of speculation that if the affidavit were true, the police would have conducted further investigation . . . ." (emphasis in original)). A conclusory allegation that a statement must be false, accompanied by no offer of proof, is insufficient to meet the standard for a *Franks* hearing. *See Franks*, 438 U.S. at 171 ("There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof."). Because Defendant fails to make a substantial showing that the information contained in the search warrant affidavit is false, the Court will deny his request for a *Franks* hearing.

      IT IS THEREFORE ORDERED THAT Defendant's MOTION TO SUPPRESS EVIDENCE, OR, IN THE ALTERNATIVE, TO HOLD A *FRANKS* HEARING (Doc. 49) is DENIED.

                                                                 */s/ James A. Parker*
                                                SENIOR UNITED STATES DISTRICT JUDGE