IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                     Cr. No. 19-2321 JAP

DECARRIO RICHARDSON,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Defendant Decarrio Richardson is charged with (1) possession with intent to distribute 500 grams or more of a mixture and substance containing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (2) being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924; and (3) using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). *See* SUPERSEDING INDICTMENT, Doc. 70. He seeks to suppress evidence, including drugs and firearms, seized during a search of his vehicle that occurred on April 11, 2018. *See* DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED IN SEARCH BEYOND THE SCOPE OF WARRANT ("Motion"), Doc. 48. Defendant argues that the search exceeded the scope of a search warrant issued by a state court judge on April 10, 2018, necessitating suppression of all evidence seized during the search. *See id.* at 1, 8.

The Motion is fully briefed. *See* UNITED STATES' RESPONSE TO DEFENDANT'S MOTIONS [sic] TO SUPPRESS EVIDENCE FROM DEFENDANT'S VEHICLE, Doc. 74; REPLY IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED IN SEARCH BEYOND THE SCOPE OF WARRANT, Doc. 85. The Court held a hearing on the

Motion on October 29, 2020. *See* CLERK'S MINUTES, Doc. 131. Concluding that officers lawfully searched Defendant's vehicle, the Court will deny the Motion.

## BACKGROUND[1]

Detective Jerry Koppman of the Bernalillo County Sheriff's Office ("BCSO") began investigating Defendant in early April 2018 after being informed by a confidential source ("the CS") that Defendant regularly conducted narcotics transactions at his residence and out of his two vehicles: a black Audi and a white BMW. *See* Motion to Suppress Hearing, Oct. 29, 2020, Tr. 7:14–15, 8:22–9:17.[2] The CS, who previously provided information regarding narcotics activities to detectives that was later corroborated, was cooperating with law enforcement in this investigation to avoid criminal charges. Doc. 131-2 at 25–26. The CS knew that any false or misleading information the CS provided could lead to the voiding of any agreements and additional criminal charges. *Id.* The CS told Detective Koppman that the CS had purchased cocaine and crack from Defendant at various times at both Defendant's residence and at designated locations to which Defendant would arrive in either the black Audi or white BMW. Tr. 9:9–15. During the first or second week in April 2018, Detective Koppman arranged and witnessed a controlled purchase of narcotics by the CS from Defendant. Tr. 11:3–10, 12–14; *see* Doc. 131-2 at 25. The transaction occurred at a predetermined location to which Defendant arrived in his black Audi. Tr. 11:8–12. The substance Defendant sold the CS field tested positive for crack-cocaine. Tr. 11:16–21.

The CS additionally informed Detective Koppman that Defendant was "always armed[.]" Tr. 9:22. Specifically, the CS had seen Defendant with a .38 caliber firearm and a 9-millimeter pistol as well as "with a pistol wedged between the front seat and center console, as well as on the

---

[1] The following section constitutes the Court's essential findings of fact under Federal Rule of Criminal Procedure 12(d).
[2] This MEMORANDUM OPINION AND ORDER cites to the court reporter's unofficial transcript. All page and line citations are subject to change on the official, edited transcript.

front passenger floorboard of his vehicle." Tr. 9:22–10:2. The CS also told Detective Koppman that Defendant always carried a black backpack containing "all of his narcotics" as well as money and an Uzi style firearm. Tr. 9:18–10:6, 28:20–22.

As part of his investigation, Detective Koppman obtained through a law enforcement database a picture of a man with the same name and date of birth as Defendant. Tr. 10:11–12; Doc. 131-2 at 25. Detective Koppman showed this picture to the CS, who positively identified the person in the picture as Defendant. Tr. 10:12–16. Detective Koppman also found through his research that Defendant had previously been convicted of multiple felony offenses, including possession of controlled substances and trafficking in firearms. Tr. 10:21–11:2.

Based on the foregoing information, on April 10, 2018, Detective Koppman sought and obtained a search warrant from a state district court judge. Tr. 8:8–20; *see* Gov't's Ex. 8, Doc. 131-2 at 22–27. The warrant authorized a search of "the persons and/or place described in the Affidavit" that is "attached and made a part of this Search Warrant." Doc. 131-2 at 22. Detective Koppman's affidavit identified the "residence to be searched" as "221 Moon NE[,] Albuquerque, NM 87123." *Id.* at 23. It further included a request to search "any sheds, outbuildings, containers, bins, garages, vehicles, and/or other structures located on the property of 221 Moon NE at the time of the execution of this warrant." *Id.* It then provided, "Affiant specifically requests to search a black Audi sedan. The Audi has chrome, custom rims and has a temporary registration tag. The registration tag is secured with a plastic license plate cover." *Id.* The objects of the search included, *inter alia*, cocaine/crack-cocaine, firearms, and U.S. currency. *See id.* at 23–24.

The next day, April 11, 2018, Detective Koppman met with officers from BCSO's Special Weapons and Tactics ("SWAT") unit and the United States Marshals Service's Fugitive Apprehension Strike Team ("FAST") to plan how to execute the warrant. Tr. 12:23–13:3. Detective Koppman identified Defendant by name and photograph and explained that Defendant

3

was known to be armed with at least one, but usually two, firearms, which he might use, and that he was believed to be carrying a large quantity of narcotics on his person or in a black backpack. Tr. 32:23–33:6, 40:17–23. Due to concerns about officer safety, the plan was for undercover narcotics detectives to conduct surveillance at Defendant's residence and wait for Defendant to return, at which point officers would use a "vehicle maneuver" to block Defendant's vehicle in, then deploy a noise flash diversionary device to distract Defendant and prevent him from being able to use any weapons against officers. Tr. 13:3–14, 40:23–41:8; *see* Def.'s Ex. B, Doc. 131-1 at 4.

With a plan in place, undercover officers set up surveillance at Defendant's residence. Tr. 13:18–21, 41:9–13. After several hours, Detective Koppman was contacted by the CS, who told Detective Koppman that Defendant was at a nearby intersection. Tr. 13:21–24, 41:15–18. Detective Koppman proceeded to that intersection, where he saw Defendant in his black Audi interacting with the CS. Tr. 13:24–14:4. After Defendant drove off, the CS contacted Detective Koppman and told him that Defendant was heading to Albuquerque's Westgate neighborhood to conduct a narcotics transaction. Tr. 14:4–13, 27:5–10. The CS also told Detective Koppman that Defendant had with him his black backpack, containing about one kilogram of cocaine, an Uzi, and a large amount of cash. *Id.*

The plan to execute the search warrant had to be adjusted at that time and "became rather fluid[.]" Tr. 14:14–16. When Defendant did not return to his residence at 221 Moon NE, Detective Koppman and units from SWAT and FAST began following Defendant in the black Audi. Tr. 14:15–21, 41:20–24. Detective Koppman did not initiate a stop and search of the black Audi at that time because he felt that if he observed Defendant travel to Westgate and could confirm that Defendant had the backpack with him, that would corroborate the information the CS had given to him and would strengthen his probable cause to search the vehicle. Tr. 35:3–17. Detective

Koppman explained that because the CS reported that Defendant "keeps all of his narcotics with him at all times in the black backpack," it was critical to confirm the location of the backpack prior to initiating a search of either Defendant's vehicle or residence. Tr. 28:15–29:13.

Detective Koppman and the SWAT and FAST units followed Defendant to Albuquerque's westside and reestablished surveillance of the black Audi in the 9900 block of Lone Mountain Ave., S.W.[3] Tr. 14:22–25, 41:24–42:2. After a period of time, Defendant was seen walking out of the residence at 9905 Lone Mountain Ave., S.W., with two unidentified individuals. Tr. 15:10–11; 25:9–11. The unidentified individuals walked towards and entered a white Cadillac Escalade. Tr. 15:12–13. Defendant was confirmed to be carrying a black backpack, and as he was entering the black Audi, a command was given to move in.[4] Tr. 15:11–15, 34:7–18, 42:5–10.

SWAT and FAST officers completed the planned vehicle maneuver to block in Defendant's vehicle. *See* Tr. 42:17–22. A SWAT unit deployed a noise flash diversionary device to momentarily distract Defendant. Tr. 42:24–43:4. SWAT officers detained both occupants of the Escalade, one of whom attempted to flee on foot. Tr. 15:15–16, 42:22–24. Defendant complied with officers' orders to exit and back away from the vehicle and was detained while a search of the vehicle was conducted. Tr. 43:4–8.

Detective Koppman observed the initial search of Defendant's vehicle and the black backpack, which was found on the backseat of the Audi. Tr. 16:6–17:8, 44:3–4; Gov't's Ex. 21, Doc. 131-2 at 40. The initial search uncovered multiple firearms, including an Uzi in the black backpack, a brick package of cocaine, multiple baggies of cocaine, bags and a glass jar containing

---

[3] The Court takes judicial notice of the fact that the 9900 block of Lone Mountain Ave., S.W., is located within the Westgate Heights neighborhood.

[4] Detective Koppman was located approximately two blocks away and heard but did not witness the takedown. Tr. 14:25–15:3, 15:6–9, 33:18–21. He testified, however, that he heard that Defendant was exiting the residence and was carrying a black backpack. Tr. 34:7–13. Detective Charles Lill, who participated in the operation, also testified that he heard over the radio that Defendant was seen carrying a black backpack as he exited the residence. Tr. 42:2–9.

marijuana, a digital scale, and over $26,000 in cash. Tr. 16:6–25. After witnessing the initial search of the vehicle, Detective Koppman returned to 221 Moon NE to execute the search warrant at Defendant's residence.[5] Tr. 17:9–11.

## DISCUSSION

Defendant principally argues that the evidence seized from the search of his vehicle should be suppressed because the search warrant authorized a search of the black Audi only if it was located at his residence at the time the warrant was executed at that location. *See* Docs. 48, 85. He contends that the officers who conducted the search of his vehicle "unreasonably interpreted" the search warrant as authorizing a search of his vehicle at any location and argues that the search of his vehicle fifteen miles from the address listed on the warrant exceeded the scope of the warrant. Doc. 48 at 1. According to Defendant, the issue before the Court is "whether the warrant authorized the search of any black Audi sedan or a search of any black Audi sedan on the described premises." Doc. 85 at 1. That is not the issue at all.

At bottom, the Court must decide whether the search of the black Audi violated Defendant's Fourth Amendment right not to be subjected to an unreasonable search. Defendant's argument regarding the scope of the search warrant is a red herring because, as the Government points out, *see* Doc. 74 at 21–22, warrantless searches of automobiles have long been recognized as reasonable under the Fourth Amendment if they are supported by probable cause.

A. Applicable Law

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *California v. Carney*,

---

[5] Defendant separately challenged the search of his residence. *See* Defendant's MOTION TO SUPPRESS EVIDENCE OR, IN THE ALTERNATIVE, TO HOLD A *FRANKS* HEARING, AND MEMORANDUM IN SUPPORT THEREOF, Doc. 49. The Court has already denied that motion, holding that probable cause to search Defendant's residence supported the search warrant. *See* MEMORANDUM OPINION AND ORDER, Doc. 89.

471 U.S. 386, 390 (1985). "This fundamental right is preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer." *Id.* "Nevertheless, because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). One such exception, the so-called automobile exception, "permits law enforcement officers who have 'probable cause to believe a car contains contraband to search the car without first obtaining a search warrant.'" *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008) (alteration omitted) (quoting *United States v. Beckstead*, 500 F.3d 1154, 1165 (10th Cir. 2007)). "The rationale for the automobile exception is based on both the inherent mobility of cars . . . and the fact that there is a reduced expectation of privacy with motor vehicles." *United States v. Mercado*, 307 F.3d 1226, 1228 (10th Cir. 2002). A warrantless search of a vehicle "is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained." *United States v. Ross*, 456 U.S. 798, 809 (1982). "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam).

    B. The search of Defendant's vehicle falls within the automobile exception and was reasonable under the Fourth Amendment.[6]

Regarding the automobile exception, Defendant argues that it does not apply because the search of his vehicle was not supported by probable cause. *See* Doc. 85 at 4–5. According to Defendant, the evidence supporting probable cause to search his vehicle consisted of nothing more

---

[6] The Court's determination that the search of Defendant's vehicle was lawful under the automobile exception should not be construed as a finding that the search was beyond the scope of the warrant. The Court expressly declines to reach the merits of the parties' arguments regarding whether the search was within the scope of the warrant because it is unnecessary to do so in light of the Court's conclusion that the automobile exception applies. Any references to "warrantless searches" should not be considered as reflecting a determination by the Court that the search was beyond the scope of the warrant.

than "general allegations of wrongdoing by Defendant, paired with one assertion by [a confidential source] that he or she happened to be privy to Defendant's plan to sell narcotics on the precise day of the search." *Id.* at 5. Defendant bases this construction of the evidence on his belief that "Detective Koppman needed fresh probable cause to search the black Audi when the execution of the warrant faltered." *Id.* Defendant is mistaken about both the law and the facts.

To the extent Defendant suggests that probable cause to search his vehicle cannot be based on facts and circumstances that were known to Detective Koppman prior to the day of the search, Defendant is wrong. Defendant cites no authority to support the proposition that Detective Koppman had to have "fresh" probable cause—by which Defendant appears to mean probable cause based on information wholly different than that supporting the issuance of the search warrant—to search Defendant's vehicle. The rule is simply that an officer had to have probable cause at the time the search was conducted. *See Carroll v. United States*, 267 U.S. 132, 149 (1925) (stating that "the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief reasonably arising out of the circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid").

"The test for probable cause is not reducible to precise definition or quantification." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (quotation marks omitted). "Probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence." *United States v. Nielsen*, 9 F.3d 1487, 1489–90 (10th Cir. 1993) (emphasis, quotation marks, and citation omitted). "If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient." *Carroll*, 267 U.S. at 161 (quotation marks and citation omitted). In assessing whether probable cause exists to support a warrantless search of a vehicle, officers

8

are "entitled to use their reasoning faculties upon *all the facts of which they had previous knowledge* in respect to the defendant[]." *Id.* at 160–61 (emphasis added). Indeed, they may rely on not only "the facts and circumstances within their knowledge" but also the facts and circumstances "of which they had reasonably trustworthy information[.]" *Id.* at 162.

Here, the facts and circumstances within Detective Koppman's and the searching officers'[7] knowledge—and of which they had reasonably trustworthy information—consisted of far more than "general allegations of wrongdoing by Defendant" and "one assertion by [a confidential source] that he or she happened to be privy to Defendant's plan to sell narcotics on the precise day of the search." Doc. 85 at 5. Detective Koppman began investigating Defendant for drug dealing in early April 2018 based on information provided by the CS, whom Detective Koppman confirmed to be a trustworthy and reliable source. Tr. 8:22–9:8. Detective Koppman "routinely" corroborated information provided by the CS through both his independent observations and additional investigation. Tr. 35:18–24. Indeed, just days before the search, Detective Koppman personally witnessed a controlled purchase of crack-cocaine involving the CS, Defendant, and the black Audi. Tr. 11:3–21. Detective Koppman additionally had reasonably trustworthy information that Defendant possessed firearms in the black Audi and kept narcotics, a firearm, and cash in a black backpack that he carried with him when completing drug transactions outside of his residence. Tr. 9:18–10:6. Detective Koppman knew that Defendant was a convicted felon who should not be in possession of a firearm. Tr. 10:21–11:2. Based on the foregoing, as well as additional information about drug dealing activity at Defendant's residence, Detective Koppman

---

[7] The Court acknowledges that Detective Koppman did not personally conduct the takedown and search of the black Audi. But under the collective knowledge doctrine, Detective Koppman's knowledge may be vertically imputed to the officers who were acting at his direction and on the strength of his probable cause. *See Chavez*, 534 F.3d at 1345–48 (holding that where one officer had all the "requisite probable cause components" to support an automobile stop and search, that officer's knowledge can be imputed vertically to another officer, who effectuated the stop and performed the search, even when "the corpus of information known to the first officer" was not communicated to the second officer).

applied for and received a search warrant, whose supporting affidavit specifically identified the black Audi as a place Detective Koppman sought to search. Doc. 131-2 at 23, 25–26.

The day after obtaining the search warrant, Detective Koppman briefed SWAT and FAST officers who would be assisting in executing the warrant. Tr. 12:14–13:3. In addition to conveying what he already knew about Defendant, including that Defendant was known to carry a large quantity of illegal narcotics and one or two firearms on his person or in a black backpack, Tr. 40:11–23, Detective Koppman stayed in communication with the SWAT and FAST units as events unfolded that day, *see* Tr. 41:15–22. After witnessing an interaction between the CS and Defendant, who was in his black Audi at the time, and being informed by the CS that Defendant had with him his black backpack containing approximately one kilogram of cocaine, an Uzi firearm, and a large sum of cash, Tr. 14:1–13, Detective Koppman advised the other units that Defendant's Audi "was mobile." *See* Tr. 41:9–22. Detective Koppman and the other units proceeded to follow Defendant to the Westgate neighborhood, where the CS had indicated Defendant was going, and reestablished surveillance of the black Audi while Defendant was inside a residence. Tr. 14:14–24, 27:10–23, 41:22–42:2. Only upon seeing Defendant exit the residence and confirming that Defendant was carrying a black backpack did officers initiate a takedown of the black Audi into which Defendant had entered. Tr. 42:6–10.

The Court concludes that under the totality of the foregoing circumstances, officers had ample probable cause to believe that Defendant's black Audi contained contraband and evidence of drug and firearms crimes at the time it was searched. Nothing more was needed to search the vehicle. *See Beckstead*, 500 F.3d at 1165.

IT IS THEREFORE ORDERED that DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED IN SEARCH BEYOND THE SCOPE OF WARRANT (Doc. 48) is DENIED.

                                           */s/ James A. Parker*
                                       SENIOR UNITED STATES DISTRICT JUDGE